UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

CHRISTIAN BATTISTI,

                  Plaintiff,

         v.

PAIGE HOSPITALITY GROUP, LLC, PARK33
RESTAURANT, LLC d/b/a THE AINSWORTH
MIDTOWN and MATTHEW SHENDELL,

                  Defendants.

-----------------------------------------------------------------X

**Civil Action No.:**

**COMPLAINT AND JURY
DEMAND**

    Plaintiff Christian Battisti ("Plaintiff" or "Mr. Battisti"), upon personal knowledge and information and belief, alleges as follows:

## I.    <u>NATURE OF THE ACTION</u>

    1.    Plaintiff, a former employee of Defendants Paige Hospitality Group, LLC ("Paige Hospitality"), Park33 Restaurant, LLC ("Park33") d/b/a The Ainsworth Midtown ("Ainsworth") and Matthew Shendell ("Shendell") (collectively, "Defendants"), brings this action seeking damages and other appropriate relief for his claims of unlawful discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, §§ 290 *et seq.* ("State HRL"), the New York City Human Rights Law, and the New York City Administrative Code §§ 8-101 *et seq.* ("City HRL"), and unpaid overtime, spread of hours and uniform pay, in violation of the Fair Labor Standards Act, ("FLSA") and the New York Labor Law ("NYLL").

## II.    <u>JURISDICTION AND VENUE</u>

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action involves federal questions.

3.      This Court has supplemental jurisdiction over the state law claims asserted pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the federal claims that they form part of the same case or controversy.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as the events and conduct giving rise to the claims occurred in this District.

### III.    PARTIES

5.      Plaintiff Christian Battisti is a resident of Brooklyn, New York. He was employed by Defendants from approximately May of 2015 to October 8, 2017.

6.      Plaintiff is an "employee" as defined in the applicable federal, New York State and New York City statutory provisions. Plaintiff is a covered employee within the meaning of the FLSA and NYLL.

7.      Defendant Paige Hospitality is a domestic limited liability company authorized to conduct business in the State of New York. Defendant's principal place of business is located at 333 West 39th Street, Suite 704, New York, New York 10018. Paige Hospitality is a group that owns and operates eight (8) bars, including the Ainsworth, where Plaintiff was previously employed. Defendant Paige Hospitality was jointly responsible for the terms and conditions of Mr. Battisti's employment.

8.      Defendant Park33 is a domestic limited liability company authorized to conduct business in the State of New York. Defendant's principal place of business is located at 167 Madison Avenue, Suite 501, New York, New York, 10016. Upon information and belief, Park33 is a subsidiary company that operates the Ainsworth, including issuing paychecks to its employees.

2

Defendant Park33 was jointly responsible for the terms and conditions of Mr. Battisti's employment.

9.      Defendant Matthew Shendell owns, operates and controls Paige Hospitality and Park 33. Upon information and belief, Mr. Shendell is a resident of the State of New York. Defendant Shendell was jointly responsible for the terms and conditions of Mr. Battisti's employment. At all times, Mr. Shendell has had the power over personnel decisions, including the power to hire and fire employees, set their wages, make payroll decisions and otherwise control the terms and conditions of their employment.

10.     Defendants jointly employed Plaintiff and had substantial control over Plaintiff's working conditions, including the unlawful policies and practices alleged herein. At all times, Defendants maintained control, oversight and direction over Plaintiff, including timekeeping, payroll and other employment practices.

11.     Defendants are "employers" as defined in the applicable federal, New York State and New York City statutory provisions. Defendants are covered employers within the meaning of the FLSA and the NYLL.

12.     Upon information and belief, at all relevant times, Defendants' annual gross volume of sales made or business done was not less than $500,000.

## IV.     FACTUAL ALLEGATIONS

### A.  Background

13.     In May of 2015, Mr. Battisti began working as a server at The Chester, a bar owned and operated by Defendants, located at 45 East 33rd Street, New York, New York. In or around September of 2015, The Chester became the Ainsworth, a full-scale restaurant, bar and lounge.

14.     For approximately the first two (2) years of his employment, Mr. Battisti worked the afternoon and night shift. The afternoon leading into the night shift is the busiest time for a bar and most lucrative time for a server to work.

15.     During this time, Mr. Battisti was often complimented by his supervisors and customers for his personal and professional service. Additionally, he was often asked to train new employees.

**B.  Demotion Based on Gender and Sexual Orientation**

16.     In early March of 2017, Eileena Kim, an executive general manager with Paige Hospitality, came to the Ainsworth to talk to Mr. Battisti. She informed him that Mr. Shendell did not want any male servers working on the floor after 4pm. She explained Mr. Shendell's view to Mr. Battisti that because the Ainsworth was a sports bar, men come to watch sports and drink. She further explained that they would "prefer women, not dudes," serve their food and drink.

17.     Shockingly, Ms. Kim informed Mr. Battisti that it was "even worse," because Mr. Battisti is gay.

18.     Mr. Battisti was appalled and confused. He attempted to explain the positive work he had done for the Defendants over the last two (2) years, including that he was often asked to train new hires (the majority of which were female).

19.     Ms. Kim agreed with Mr. Battisti regarding his skills as a server, but reiterated Defendants' decision to remove him as a server from the lucrative afternoon and evening shift.

20.     Ms. Kim informed Mr. Battisti that they wanted to offer him a position as breakfast captain. She falsely attempted to portray the position as a promotion, when in fact it was a significant demotion.

21.     As a breakfast captain, Mr. Battisti's salary was $50,000 per year and he was unable to accept tips. This was a significant decrease from his position as a server.

22.     The breakfast shift is the least busy time of day for the Ainsworth, further evidencing Defendants' intention to hide Mr. Battisti.

23.     Later that day, Mr. Battisti spoke to Mr. Shendell about the new position and expressed his concerns and disappointment regarding the discriminatory treatment. In response, Mr. Shendell told Mr. Battisti that "a gay guy and a sports bar are not a good match."

24.     Because of the discrepancy in earnings between the breakfast captain and server position, Mr. Battisti asked Mr. Shendell if he could work some extra lunch shifts to make extra money. Mr. Shendell told Mr. Battisti that he could work 2-3 lunch shifts per week. Unfortunately, this promise was not fulfilled.

25.     From March of 2017 to October of 2017, Mr. Battisti asked his supervisors weekly if he could work additional lunch shifts to make up for the earnings differential caused by the demotion. In response, he was told, "you know Matt doesn't want males on the floor."

26.     Upon information and belief, after Mr. Battisti's demotion, there were no male servers working at the Ainsworth after 4pm.

27.     During the approximately seven (7) months he was employed as a breakfast captain, Mr. Battisti worked just three (3) lunch shifts.

C. **Termination of Mr. Battisti's Employment**

28.     On multiple occasions, Mr. Battisti spoke to his manager, "Daniel," and expressed that he felt disappointed and disrespected. He also stated that he felt like Defendants wanted to hide him.

29.     On or about October 8, 2017, in response to Mr. Battisti's complaints of discrimination, Daniel called Mr. Battisti into his office and informed him that the Ainsworth was "going towards a specific orientation and you don't fit in." Mr. Battisti understood that Daniel had terminated him because he no longer fit in with the company's image.

**D.  Failure to Pay Overtime, Spread of Hours and Uniform-Related Expenses as Required by Law**

30.     Throughout Mr. Battisti's employment, he regularly worked more than forty (40) hours per week and more than ten (10) hours per day without compensation for overtime and spread of hours.

31.     Throughout Mr. Battisti's employment, he was required to wear a uniform that consisted of a black button-down shirt bearing the Ainsworth "A" logo, black pants and black Converse All Star sneakers. Defendants provided Mr. Battisti with the black button-down shirt but required Mr. Battisti to purchase black pants and Converse All Star sneakers. The button-down shirt and black pants had to be dry-cleaned. At all times, Defendants failed to compensate Mr. Battisti for any uniform-related expenses.

32.     For the first several months after The Chester transitioned to the Ainsworth, from approximately September of 2015 through December of 2015, Mr. Battisti regularly worked six (6) days per week, from 11am to 11pm or later. Mr. Battisti often worked sixty (60) hours per week. Defendants failed to properly pay Mr. Battisti for overtime or spread of hours during this time.

33.     Following the busy holiday season, Mr. Battisti's hours were briefly reduced and he worked approximately thirty (30) hours per week.

34.     From approximately March of 2016 until his demotion, Mr. Battisti worked five (5) days per week, often working over fifty (50) hours per week. Despite routinely working more

6

than forty (40) hours per week, Mr. Battisti only sporadically received a few hours of overtime compensation.

35.     Mr. Battisti was often told by managers to clock out before the end of his shift (to avoid the time sheets showing more than forty (40) hours) but to continue working off-the-clock for several additional unpaid hours, which he did.

36.     Mr. Battisti complained to Defendants (including but not limited to "Devin," "Daniel," and Ms. Kim) about not receiving overtime on most occasions. In response, Devin told Mr. Battisti that he was "lucky" to receive any overtime compensation at all. Daniel and Ms. Kim ignored Mr. Battisti's complaints.

**E.  EEOC Complaint**

37.     On February 15, 2018, Plaintiff submitted a charge of discrimination and retaliation to the Equal Employment Opportunity Commission ("EEOC") alleging a violation of discrimination based on sex and sexual orientation.

38.     On September 7, 2018, Plaintiff received a Notice of Right to Sue from the EEOC.

39.     This complaint is filed within 90 days of receipt of the notice.

**COUNT I**
**VIOLATION OF TITLE VII, 42 U.S.C. §§ 2000e, *et seq.***
**(As Against Defendants Paige Hospitality and Park33)**

40.     Plaintiff hereby repeats and realleges all allegations set forth as if fully set forth herein.

41.     Defendants, employers within the meaning of Title VII, discriminated against Plaintiff by treating him differently from and less preferably than, similarly situated female employees.

42.     Defendants, employers within the meaning of Title VII, discriminated against Plaintiff by treating him differently from and less preferably than, similarly situated heterosexual employees.

43.     Defendants' policies, practices and procedures have led to a disparate impact on Plaintiff with respect to the terms and conditions of his employment.

44.     By the actions described above, Defendants have violated Title VII.

45.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

46.     Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

47.     Under 42 U.S.C. §§ 2000e-5(k), Plaintiff is also entitled to reasonable costs and attorneys' fees.

**COUNT II**
**VIOLATION OF THE STATE HRL**
**(As Against All Defendants)**

48.     Plaintiff hereby repeats and realleges all allegations set forth as if fully set forth herein.

49.     Defendants are "employers" as defined by the State HRL.

50.     Plaintiff is an "employee" as defined by the State HRL.

51.     The aforementioned acts of Defendants constitute unlawful discrimination against Plaintiff, under the State HRL in violation of Article 15, §§ 290 *et. seq.* of the New York State Executive Laws and specifically § 296 thereof, which states that:

It shall be an unlawful discriminatory practice: (a) For an employer…because of an individual's…sexual orientation…sex…to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

52. Upon information and belief, similarly situated female employees were treated more favorably (i.e. were scheduled for the more lucrative shifts and permitted to earn tips) when involved in similar situations. Said adverse treatment of Plaintiff was based upon his sex rather than any non-discriminatory reason.

53. Upon information and belief, similarly situated heterosexual employees were treated more favorably (i.e. were scheduled for the more lucrative shifts and permitted to earn tips and not terminated) when involved in similar situations. Said adverse treatment of Plaintiff was based upon his sexual orientation rather than any non-discriminatory reason.

54. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

55. As a result of Defendants' violations of the foregoing statutory laws, they are liable to Plaintiff pursuant to State HRL § 297(9).

## COUNT III
## VIOLATION OF THE CITY HRL
### (As Against All Defendants)

56. Plaintiff hereby repeats and realleges all allegations set forth as if fully set forth herein.

57. Defendants are "employers" as defined in the City HRL.

58. Plaintiff is an "employee" as defined by the City HRL.

59. The aforementioned acts of Defendants constitute unlawful discrimination against Plaintiff in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §

8-107 under the City HRL, which states that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived…gender…sexual orientation…of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

60.     As set forth above, Defendants, by their conduct, discriminated against Plaintiff and forced Plaintiff to endure adverse employment actions affecting and altering the terms, conditions and privileges of his employment.

61.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

62.     As a result of Defendants' violations of the foregoing statutory laws, it is liable to Plaintiff pursuant to City HRL § 8-502 for damages and such other remedies as may be deemed just and appropriate.

**COUNT IV**
**AIDING AND ABETTING DISCRIMINATION**
**IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW § 296**
**(As Against Defendant Shendell)**

63.     Plaintiff hereby repeats and realleges all allegations set forth as if fully set forth herein.

64.     New York State Executive Law § 296(6) sets forth that it shall be an unlawful discriminatory practice:

> For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so.

65.     Defendant Shendell, by his actions, engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6), by aiding, abetting, inciting, compelling,

and coercing the discriminatory conduct against Plaintiff based upon his sex and sexual orientation.

66.     As a result of Defendant Shendell's violations of the foregoing statutory laws, he is liable to Plaintiff pursuant to State HRL § 297(9).

**COUNT V**
**AIDING AND ABETTING DISCRIMINATION**
**IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW § 8-107**
**(As Against Defendant Shendell)**

67.     Plaintiff repeats and realleges all allegations set forth as if fully set forth herein.

68.     The New York City Administrative Code, Title 8, § 8-107(6), provides that it shall be an unlawful discriminatory practice:

> For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so.

69.     Defendant Shendell engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code, Title 8, § 8-107(6), by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct against Plaintiff based upon his sex and sexual orientation.

70.     As a result of Defendant Shendell's violations of the foregoing statutory laws, he is liable to Plaintiff pursuant to City HRL § 8-502 for damages and such other remedies as may be deemed just and appropriate.

**COUNT VI**
**UNPAID OVERTIME**
**IN VIOLATION OF FAIR LABOR STANDARDS ACT**
**(As Against All Defendants)**

71.     Plaintiff repeats and realleges all allegations set forth as if fully set forth herein.

11

72.     At all times relevant, Plaintiff was employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

73.     At all times relevant, Plaintiff was an employee within the meaning of 29 U.S.C. §§ 201 *et seq.*

74.     At all times relevant, Defendants have been employers of Plaintiff, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

75.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations apply to Defendants and protect Plaintiff.

76.     Defendants have engaged in a widespread pattern, policy and practice of violating the FLSA.

77.     Defendants have failed to pay Plaintiff the appropriate overtime wages for all hours he worked in excess of forty (40) hours per workweek.

78.     Defendants' unlawful conduct has been willful and intentional. Defendants were aware or should have been aware that the practices set forth above were unlawful. Because Defendants' violations have been willful, a three (3) year statute of limitations applies.

79.     As a result of Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being denied overtime compensation in amounts to be determined at trial. Plaintiff is entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT VII**
**UNPAID OVERTIME**
**IN VIOLATION OF NEW YORK LABOR LAW**
**(As Against All Defendants)**

80.     Plaintiff repeats and realleges all allegations set forth as if fully set forth herein.

81.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff.

82.     Defendants have failed to pay Plaintiff the premium overtime wage to which he is entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked in excess of forty (40) hours per workweek.

83.     Defendants have failed to pay Plaintiff overtime at the rate of 1.5 times his regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

84.     Defendants have failed to keep, make, preserve, maintain and furnish accurate records of Plaintiff's time worked.

85.     Through their knowing or intentional failure to pay Plaintiff overtime wages for all hours worked in excess of forty (40) hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*

86.     Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**COUNT VIII**
**UNPAID SPREAD OF HOURS PAY**
**IN VIOLATION OF NEW YORK LABOR LAW**
**(As Against All Defendants)**

87.     Plaintiff repeats and realleges all allegations set forth as if fully set forth herein.

88.     Defendants have failed to pay Plaintiff additional compensation of one (1) hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the

beginning and end of his workday, including working time plus time off for meals, was greater than ten (10) hours.

89.     Through their knowing or intentional failure to pay Plaintiff, Defendants have willfully violated the NYLL.

90.     Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid spread of hours wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT IX**
**UNPAID UNIFORM-RELATED EXPENSES**
**IN VIOLATION OF NEW YORK LABOR LAW**
**(As Against All Defendants)**

91.     Plaintiff repeats and realleges all allegations set forth as if fully set forth herein.

92.     Defendants required Plaintiff to wear a uniform consisting of a black shirt bearing the Ainsworth "A" logo, black pants and black Converse All Star sneakers.

93.     Defendants required Plaintiff to purchase his own pants and sneakers and did not reimburse Plaintiff for any uniform-related expenses.

94.     Defendants failed to launder and/or maintain mandatory uniforms for Plaintiff and failed to pay him the required weekly amount for uniform maintenance.

95.     By Defendants' failure to pay Plaintiff for the purchase and/or maintenance of required uniforms, Defendants have willfully violated the NYLL.

96.     Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants the costs of purchasing and maintaining his uniform, liquidated damages, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

    a.  Compensatory damages in an amount to be determined by a jury sufficient to compensate Plaintiff for all pain and suffering, humiliation, emotional distress, stress and mental anguish;

    b.  Economic damages in the form of back pay and compensation for lost benefits, plus pre-judgment interest;

    c.  Damages in the form of front pay or reinstatement, plus pre-judgment interest;

    d.  An award of punitive damages sufficient to deter Defendant from engaging in future unlawful conduct;

    e.  Reasonable costs and attorneys' fees; and

    f.  Any such further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as of right.

Dated: New York, New York
       October 31, 2018

                       Respectfully submitted,

                       By: *Brittany Weiner*
                       Brittany Weiner, Esq.
                       Imbesi Law PC
                       450 7th Avenue, Suite 1408
                       New York, NY 10123
                       Tel: (646) 767-2271
                       Fax: (212) 658-9177
                       Email: brittany@lawicm.com